[Cite as *State v. Gavin*, 2015-Ohio-2996.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 13CA3592 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| RONALD E. GAVIN, | : | |
| Defendant-Appellant. | : | **RELEASED: 07/13/2015** |

<u>APPEARANCES</u>:

John A. Gambill, Gambill Law, Ltd., Portsmouth, Ohio, for appellant.

Mark E. Kuhn, Scioto County Prosecuting Attorney, Portsmouth, Ohio, for appellee.

Harsha, J.

{¶1}    After a jury convicted Ronald E. Gavin of trafficking in heroin, possession of heroin, conspiracy to traffic in heroin, and tampering with evidence the court sentenced him to prison.

{¶2}    Gavin asserts that the court erred in admitting "other acts" evidence that indicated Gavin was involved in prior drug related activity.  When the state filed a notice of intent to use other acts evidence in its case, Gavin objected. The trial court issued a pretrial ruling denying the objection and indicating its intent to allow the state to introduce evidence of Gavin's alleged prior drug activity. When the state introduced this at trial, Gavin did not renew his pretrial objections.  By not renewing his objections he forfeited all but plain error on appeal. However, Gavin does not claim that plain error occurred and even if he had, he could not establish its existence. If the other acts evidence was excluded, the outcome of his trial would not clearly have been different

because a witness testified he saw Gavin selling heroin and Gavin admitted everything found in the Camaro (including the heroin) was his.

{¶3}   Next Gavin contends that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence because there was no evidence to link him to the heroin in the car. The state introduced evidence that when he was arrested Gavin told police everything in the car they searched was his. That search uncovered a baggie containing 97.4 grams of heroin.  In addition a confidential informant testified that he saw Gavin sell heroin the same day as his arrest. There was also evidence that a shipment of heroin that Gavin had been expecting had come in just before he was arrested.  Based on this evidence the jury did not clearly lose its way or create a manifest miscarriage of justice in finding the state had proved the essential elements of these crimes beyond a reasonable doubt.

{¶4}   Gavin also argues that his conviction for tampering with evidence is not supported by sufficient evidence and is against the manifest weight of the evidence. Based on the Supreme Court's recent decision in *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.2d 1175, we agree. The record does not contain sufficient evidence to support Gavin's conviction because at the time he would have concealed the heroin in the car, there was no proceeding or investigation that Gavin knew was in progress or was likely to occur.

{¶5}   Finally, Gavin contends that he received ineffective assistance of counsel because his trial attorney did not move to suppress evidence obtained as a result of the warrantless search of the car.  Gavin's contention is meritless because he cannot demonstrate that his trial counsel's performance was deficient. It is clear that such a

motion lacks merit because the officers had a reasonable suspicion the car contained evidence of a crime.

{¶6}   Therefore, we reverse Gavin's conviction for tampering with evidence and remand the cause to the trial court to vacate that conviction and sentence.  We affirm his remaining convictions.

## I. FACTS

{¶7}   In September 2013, the Scioto County Grand Jury returned a joint indictment charging Gavin and Ali "Nikki" Thompson with one count of trafficking in heroin, one count of possession of heroin, one count of conspiracy to traffic in heroin, one count of tampering with evidence, and three counts of possession of criminal tools. According to the indictment the drug offenses occurred on September 10, 2013. Gavin retained counsel and entered a plea of not guilty to the charges in the indictment.

{¶8}   Prior to trial the state filed a notice of intent under Evid.R. 404(B) to use "other acts" evidence "establishing the Defendant's pattern of conduct that includes possession of Heroin and engaging in drug trafficking during the Spring and Summer of 2013." Gavin filed a memorandum in opposition, which argued that the state's intended use of testimony about his "past drug activities" and his Facebook postings was improper and that this evidence should be excluded because it was too "remote in time and unrelated to the pending case." The court conducted a pretrial hearing on Gavin's objection and indicated that the state could use this evidence as long as it occurred no more than five months before his September 10, 2013 arrest.

{¶9}   According to several witnesses at trial, including Bria Gilliland, Taniya Froe, Ebony Underwood, Manual Lofton, Thompson, Marcell Woods, and Ashley

Bragdon, the appellant sold heroin to several people on numerous occasions during the summer of 2013. Gavin got the heroin from Chicago from sources including his cousin Homer, whose real name is Rehomore Spivey. Homer often travelled to Portsmouth and stayed with Gavin and his girlfriend, Thompson, at Thompson's apartment. Gilliland testified that she gave Gavin a ride to Columbus to pick up Homer in June or July of 2013, and they had another person drive back to Portsmouth with the drugs that Homer brought from Chicago for Gavin to sell.  Charles Broughton testified that over the summer, Gavin's brother had him pick up heroin twice from Gavin near the apartment Gavin shared with Thompson.

{¶10}  Testimony indicated Gavin sold drugs primarily near the apartment he shared with Thompson or around the basketball court at Bannon Park near Farley Square; he drove Thompson's blue Camaro on a daily basis, including September 10, 2013.  Gavin sold what one witness called the "best heroin in Scioto County" because he did not cut it small like the other dealers, which resulted in a strong powder that sometimes caused overdoses. On Gavin's instructions, Thompson wired money to people in Chicago to pay people Gavin owed for selling drugs.

{¶11}  Thompson yelled at Gavin once when she found drugs on her dresser because she was on probation and her teenage son, Marcus, lived with them. Gavin generally tried to hide drugs in public places but because he had lost drugs he had hidden, he owed Homer money. The amount Gavin owed Homer or other Chicago drug suppliers was estimated by different witnesses at between $7,000 and $10,000; the suppliers he owed money had threatened him.

{¶12} Sergeant Steve Timberlake of the Portsmouth Police Department testified he started an investigation after he received information from several people, including Underwood and Froe. The sources indicated that Gavin was receiving heroin from Chicago and that he was selling it near the apartment where he lived with Thompson, (which was close to Spartan Stadium) and at Bannon Park (near Farley Square). Lofton acted as a confidential informant for the police and informed Sgt. Timberlake in early September 2013 that Gavin had told him that he was expecting a shipment of heroin from Homer and that when he got it, he needed to sell it as fast as he could. Underwood confirmed this evidence by testifying that Gavin had told her in late August that he was out of heroin, but he was expecting more from Chicago.

{¶13} On September 8, 2013, Lofton heard that Gavin had received the shipment of heroin and had resumed selling heroin in the park. Lofton attempted to contact Sgt. Timberlake, who was on vacation. On September 10, Lofton successfully contacted Sgt. Timberlake and told him that Gavin had received his shipment and was selling heroin again in the park. On that date, September 10, 2013, Lofton saw Gavin in the Camaro with Thompson, and later that day, he saw him selling drugs in the park. Thompson's daughter, Kayla Easley, testified that on September 10, 2013, Gavin rolled up the windows on the parked Camaro before she gave him a ride to the park to play basketball with a friend.

{¶14} Sgt. Timberlake contacted Thompson's probation officer and coordinated a home visit and search of Thompson's apartment for that same evening. After a court bailiff handcuffed Gavin and police secured the other people in the apartment, Sgt. Timberlake searched outside the apartment because he had received information that

Gavin normally hid his drugs and drug paraphernalia there.  Finding nothing, Sgt. Timberlake then searched the Camaro where he found a baggie, which appeared to contain heroin, behind a stereo faceplate under the passenger seat. His field test of the substance indicated that it was heroin, so he sent it to the Ohio Bureau of Criminal Identification and Investigation (BCI) for further testing.  A BCI forensic scientist determined that the sample contained 97.4 grams of heroin.

{¶15}  Bryant testified that when he first handcuffed Gavin and began patting him down, Gavin said that he used to sell drugs, but he had quit.  But after Sgt. Timberlake found the drugs in the Camaro, Gavin told Bryant that everything in the car was his and that Thompson had nothing to do with it.  He later recanted that admission by claiming that the police had planted the drugs in the car.  Marcell Woods confirmed that Gavin had told Bryant that if the police found anything in the search, it was his and that Thompson had nothing to do with it.

{¶16}  After being arrested Gavin told Lofton that he thought Woods or Helen Johnson had set him up and that they were going to get "F'd up."  Gavin also wrote letters to Thompson asking her not to link him to the Camaro and to tell the police that he did not drop her off at work by driving the car on September 10.  Gavin also asked Thompson to tell the police that the money she wired for him was for his son, rather than to pay off people for the drugs.  Sgt. Timberlake looked at Gavin's Facebook page for additional evidence after his arrest and found several photographs of Gavin posing with large sums of cash, which appeared consistent with his drug dealing because he was not employed during this period.  According to Lofton and Woods, Gavin was never secretive about his drug dealing; instead, he was very reckless.

**{¶17}** Notwithstanding the court's pretrial ruling denying Gavin's request to exclude the state's introduction of "other acts" testimony, Gavin's trial counsel did not renew his objections at trial when this testimony and exhibits were admitted into evidence through numerous witnesses. The jury returned verdicts finding Gavin guilty of trafficking in heroin, possession of heroin, conspiracy to traffic in heroin, and tampering with evidence, but found him not guilty of the three counts of possession of criminal tools. The trial court merged Gavin's first three convictions into his conviction for trafficking in heroin and sentenced him to a mandatory prison term of 11 years. The court further sentenced Gavin to a prison term of 36 months on his conviction for tampering with evidence, and ordered that it run consecutively to his other sentence, for an aggregate prison term of 14 years, with 11 years being mandatory. This appeal followed.

## II. ASSIGNMENTS OF ERROR

**{¶18}** Gavin assigns the following errors for our review:

1. THE TRIAL COURT ERRED IN ADMITTING THE "OTHER ACTS" TESTIMONY AND SOCIAL MEDIA PHOTOGRAPHS RELATED TO APPELLANT'S ALLEGED PRIOR DRUG-RELATED ACTIVITY.

2. THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO CONVICT APPELLANT OF TRAFFICKING IN DRUGS/HEROIN, AND CONSPIRCY TO TRAFFIC IN HEROIN ON OR ABOUT SEPTEMBER 10, 2014; IN THE ALTERNATIVE, THE CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

3. THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO CONVICT APPELLANT OF TAMPERING WITH EVIDENCE BECAUSE THERE WAS NO PROOF THAT THE DEFENDANT INTENDED TO IMPAIR THE VALUE OR AVAILABILITY OF EVIDENCE RELATED TO AN EXISTING OR LIKELY OFFICIAL INVESTIGATION OR PROCEEDING; IN THE ALTERNATIVE, THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

4. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HIS COUNSEL DID NOT MOVE TO SUPPRESS EVIDENCE OBTAINED AS A RESULT OF THE WARRANTLESS SEARCH OF THE VEHICLE OUTSIDE ALI N. THOMPSON'S RESIDENCE.

### III. LAW AND ANALYSIS

#### A. Other Acts Evidence

**{¶19}** In his first assignment of error Gavin asserts that the trial court erred in admitting "other acts" testimony and social media photographs related to his purported prior drug activity. In general, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Evid.R. 404(B). The state contends the evidence was admissible to show Gavin had a scheme or plan to distribute drugs in Scioto County and to show the modus operandi.

**{¶20}** "The trial court has broad discretion in the admission and exclusion of evidence, including evidence of other acts under Evid.R. 404(B)." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67. "Appeals of such decisions are considered by an appellate court under an abuse-of-discretion standard of review." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, syllabus. The Supreme Court of Ohio has "defined 'abuse of discretion' as an 'unreasonable, arbitrary, or unconscionable use of discretion, or as a view or action that no conscientious judge could honestly have taken.' " *Kirkland* at ¶ 67, quoting *State v. Brady*, 119 Ohio St.3d 375, 2008-hio-4493, 894 N.E.2d 671, ¶ 23.

**{¶21}** Before we can review the trial court's decision, however, we must determine whether Gavin preserved this issue for review. In essence, Gavin sought a

pretrial in limine ruling on the issue.  *See State v. Felts*, 4th Dist. Ross No. 13CA3407, 2014-Ohio-2378, ¶ 15, quoting *State v. Grubb*, 28 Ohio St.3d 199, 201, 593 N.E.2d 142 (1986) ("[a] motion in limine 'is a precautionary request, directed to the inherent discretion of the trial judge, to limit the examination of witnesses by opposing counsel in a specified area until its admissibility is determined by the court outside the presence of the jury' ").  *See State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 65-69.

**{¶22}**  Nevertheless, "Ohio law is clear * * * that a ruling on a motion in limine may not be appealed and that objections to the introduction of testimony or statements of counsel must be made during the trial to preserve evidentiary rulings for appellate review."  *Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, 816 N.E.2d 1049, ¶ 34; *State v. Brown*, 38 Ohio St.3d 305, 528 N.E.2d 523 (1988), paragraph three of the syllabus ("A denial of a motion *in limine* does not preserve error for review.  A proper objection must be raised at trial to preserve error"); *State v. Hambrick*, 4th Dist. Ross No. 11CA3294, 2012-Ohio-5139, ¶ 12 ("In essence, these motions were motions in limine and such rulings cannot form the basis for an assignment of error in a later appeal").

**{¶23}**  By not renewing his objections to this "other acts" evidence at trial, Gavin forfeited all but plain error.  *See Diar* at ¶ 70 ("[d]uring the trial, except where mentioned, the defense did not renew its objections to the introduction of 'other acts' testimony and thus waived all but plain error"); *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) ("Whereas forfeiture is the failure to make the timely

assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.' * * *. Mere forfeiture, as opposed to waiver, does not extinguish an 'error' ").

{¶24} To prevail on a claim of plain error Gavin must show that an error occurred, that the error was plain, and that but for the error, the outcome of the trial clearly would have been otherwise. *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 69; *State v. Leonhart*, 4th Dist. Washington No. 13CA38, 2014-Ohio-5601, ¶ 53.

{¶25} Gavin has not established plain error; in fact, he does not even claim plain error. *See State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 17-20 (appellate court need not consider plain error where appellant fails to timely raise plain-error claim); *Wright v. Ohio Dept. of Jobs & Family Servs.*, 9th Dist. Lorain No. 12CA010264, 2013-Ohio-2260, ¶ 22 (when a claim is forfeited on appeal and the appellant does not raise plain error, the appellate court will not create an argument on his behalf).

{¶26} Moreover, even without the other acts evidence the outcome of the trial would not have clearly been different. Lofton testified that he saw Gavin driving the Camaro and selling heroin on the date at issue, September 10, 2013. Bryant and Woods testified that Gavin admitted after he was arrested that anything found in the police search of the car was his and not his girlfriend's. Lofton also testified that Gavin had just received a heroin shipment in from Chicago and that he had to "move it" fast. Based on this evidence alone, any reasonable jury would have convicted Gavin. *But see also* our discussion below of the sufficiency and manifest weight of the evidence.

**{¶27}**  We overrule his first assignment of error.[1]

### B.  Drug Convictions:

### Sufficiency and Manifest Weight of the Evidence

**{¶28}**  In his second assignment of error Gavin contends that his convictions for trafficking in heroin, possession of heroin, and conspiracy to traffic in heroin are not supported by sufficient evidence and are against the manifest weight of the evidence. "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell*, 139 Ohio St.3d 12, 2014–Ohio–1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  The court must defer to the trier of fact on questions of credibility and the weight assigned to the evidence.  *Kirkland*, 140 Ohio St.3d 73, 2014–Ohio–1966, 15 N.E.3d 818, at ¶ 132.

**{¶29}**  In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011–Ohio–6254, 960 N.E.2d 955, ¶ 119.  "Although a court of

---

[1] We caution the state that it appears to push the boundaries of acceptable uses of Evid.R. 404(B). Had the error been properly preserved, the outcome may well have been adverse to the state. Although the state claimed at oral argument that the "other acts" evidence was introduced to prove Gavin's conspiracy charge, its notice of intent to use this evidence at trial did not disclose this purpose. Therefore, we reject the state's attempt to raise a new contention on appeal.

appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387. But the weight and credibility of evidence are to be determined by the trier of fact. *Kirkland* at ¶ 132. "A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it." *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014–Ohio–1941, ¶ 23. We defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. *Id.*

**{¶30}** The jury convicted Gavin of trafficking in heroin in violation of R.C. 2925.03(A)(2), possession of heroin in violation of R.C. 2925.11(A), and conspiracy to traffic in heroin in violation of R.C. 2923.01 and 2925.03(A), all occurring on September 10, 2013.

**{¶31}** R.C. 2925.03(A)(2) provides that "[n]o person shall knowingly * * * "[p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person."

**{¶32}** R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess or use a controlled substance or a controlled substance analog."

**{¶33}** R.C. 2923.01(A) provides that "[n]o persons, with purpose to commit or to promote or facilitate the commission of *** a felony drug trafficking *** offense *** shall

\*\*\* [w]ith another person or persons, plan or aid in the commission of any of the specified offenses."

**{¶34}** Gavin claims that his drug convictions are not supported by sufficient evidence and are against the manifest weight of the evidence because the record is "devoid of any direct evidence that Appellant was aware of, let alone exercised dominion or control over, the drugs located in the blue Camaro."

**{¶35}** "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "[P]ossession" is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "Possession may be actual or constructive." *State v. Moon*, 4th Dist. Adams No. 08CA875, 2009–Ohio–4830, ¶ 19, citing *State v. Butler*, 42 Ohio St.3d 174, 175, 538 N.E.2d 98 (1989) ("[t]o constitute possession, it is sufficient that the defendant has constructive possession").

**{¶36}** " 'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.' " *State v. Kingsland*, 177 Ohio App.3d 655, 2008–Ohio–4148, 895 N.E.2d 633, ¶ 13 (4th Dist.), quoting *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004–Ohio–5747, ¶ 39. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus;

*State v. Brown*, 4th Dist. Athens No. 09CA3, 2009–Ohio–5390, ¶ 19.  For constructive

possession to exist, the state must show that the defendant was conscious of the

object's presence.  *Hankerson* at 91; *Kingsland* at ¶ 13.  Both dominion and control, and

whether a person was conscious of the object's presence may be established through

circumstantial evidence. *Brown* at ¶ 19.  "Moreover, two or more persons may have joint

constructive possession of the same object."  *Id.*

{¶37}  The state introduced evidence that Gavin told police when he was

arrested that everything in the car they searched was his and that search uncovered a

baggie containing 97.4 grams of heroin.  In addition Lofton testified that he saw Gavin

sell heroin the same day as his arrest, and there was evidence that Gavin had been

expecting a shipment of heroin from Chicago that had arrived a couple days before his

arrest.  Moreover, many witnesses testified that Gavin drove the car on a daily basis,

including on the day of his arrest.  Finally, Gavin's threats, directed at people he thought

"ratted" him out, and his incriminating letters to his wife after his arrest suggesting that

she lie about his use of the car, are indicative of his exercise of dominion and control

over the heroin.  Based on this extensive, credible evidence, the jury properly found the

essential elements of these crimes proven beyond a reasonable doubt and did not

clearly lose its way or create a manifest miscarriage of justice so as to warrant a

reversal.  We overrule Gavin's second assignment of error.

*C.* Tampering with Evidence:

Sufficiency and Manifest Weight of the Evidence

{¶38}  In his third assignment of error Gavin contends that his conviction for

tampering with evidence is not supported by sufficient evidence and is against the

manifest weight of the evidence. R.C. 2921.12(A)(1) provides that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." As the Supreme Court of Ohio recently held, "[t]here are three elements of this offense: (1) knowledge of an official proceeding or investigation in progress or likely to be instituted, (2) the alteration, destruction, concealment, or removal of the potential evidence, (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation." *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.2d 1175, ¶ 11.

**{¶39}** As Gavin notes, *Straley* specifically addressed the proof required for a tampering conviction under R.C. 2921.12(A)(1). In that case two plainclothes narcotics detectives in an unmarked police vehicle stopped the defendant's car for travelling left of center, and after noting the smell of alcohol in the vehicle, the defendant's slurred speech, and her inability to produce a driver's license, they obtained her consent to search her vehicle and bag and found no contraband. The detectives decided not to charge her, but as they were attempting to arrange transportation home for the defendant, she stated she needed to urinate, ran around the corner of a building, and relieved herself. One of the detectives walked back to the area where the defendant had been and retrieved a clear, urine soaked cellophane baggie that contained crack cocaine. Straley was convicted of trafficking and possession of cocaine and tampering with evidence. The Second District Court of Appeals reversed the conviction for tampering with evidence. The Supreme Court of Ohio affirmed the judgment of the

court of appeals by holding that "[a] conviction for the offense of tampering with evidence pursuant to R.C. 2921.12(A)(1) requires proof that the defendant intended to impair the value or availability of evidence that related to an existing or likely official investigation or proceeding." *Id.* at syllabus. In essence, the court determined the evidence must relate to crime being investigated or the conduct that formed the basis for a citizen/officer contact, e.g. DUI, no drivers license, or public urination, not of a yet undiscovered crime.

**{¶40}** The Supreme Court reasoned at ¶ 16-18:

Based on our reading of the tampering statute, we agree with the Second District that the evidence tampered with must have some relevance to an ongoing or likely investigation to support a tampering charge. R.C. 2921.12(A)(1) requires the state to prove that an offender, with knowledge of an ongoing (or likely) investigation or proceeding, tampered with (altered, destroyed, concealed, or removed) a record, document, or thing "with purpose to impair its value or availability as evidence in such proceeding or investigation." (Emphasis added.) The word "such" is an adjective commonly used to avoid repetition. It means "having a quality already or just specified." Webster's Third New International Dictionary 2283 (1986). In this instance, "such" investigation refers back to the investigation just specified, i.e., the one that that the defendant knows is ongoing or is likely to be instituted. Therefore, the evidence must relate to that investigation; otherwise, the word "such" loses all meaning. The state's argument that all evidence recovered in an investigation should be included in the ambit of the tampering statute would require us to change the language from "such" proceeding or investigation to "any" proceeding or investigation.

\*\*\*

In this case, the state also brought additional charges related to the contraband that Straley discarded. And Straley pled no contest to both the trafficking and possession charges. Our holding simply requires that to establish a violation of the tampering statute, the state must show that the defendant, with knowledge of a proceeding or investigation that is in progress or likely to be instituted, altered, destroyed, concealed, or removed any "record, document, or thing" with the purpose to impair its

value or availability as evidence in that proceeding or investigation. There is no need to expand the reach of the statute beyond its plain meaning.[2]

The state acknowledges that *Straley* renders its argument in this case "greatly diminished." Nevertheless, it opines that Thompson's testimony that she previously yelled at Gavin several weeks before his arrest about finding drugs on their dresser provided sufficient evidence that he knew an investigation was likely. At best, this might provide knowledge to Gavin that he should not keep drugs in plain sight inside a probationer's apartment. However, we are not persuaded that this small sliver of evidence supports a finding that Gavin knew that an investigation was either existing or likely when he put the heroin underneath the passenger seat of the car. To the contrary, his open heroin dealing in public places, which some witnesses referred to as reckless, indicates that he was not aware of any existing or likely investigation into his heroin trafficking and possession.

{¶41}   Furthermore, the state does not argue in this appeal that this case falls within the category of tampering cases in which the "unmistakable evidence" of criminal conduct provides the defendant with the requisite knowledge that an investigation is likely to occur. *Compare State v. Barry,* 4th Dist. Scioto No. 13CA3596, 2014-Ohio-4452, ¶ 10-13.[3] Therefore, we sustain Gavin's third assignment of error.

### D. Ineffective Assistance of Counsel

{¶42}   In his fourth assignment of error Gavin asserts that he received ineffective assistance of counsel because his trial attorney did not move to suppress the heroin obtained as a result of the warrantless search of the Camaro outside Thompson's

---

[2] Interestingly, the Supreme Court apparently found RC 2921,12(A)(1) to be both "plain" and "ambiguous." *See* ¶ 10 and 18.
[3] In *State v. Barry*, 141 Ohio St.3d 1452, 2015-Ohio-239, 23 N.E.3d 1195, the Supreme Court of Ohio allowed a certified conflict concerning this court's decision.

apartment.  To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Short*, 129 Ohio St.3d 360, 2011–Ohio–3641, 952 N.E.2d 1121, ¶ 113; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Knauff*, 4th Dist. Adams No. 13CA976, 2014–Ohio–308, ¶ 23. The defendant has the burden of proof because in Ohio, a properly licensed attorney is presumed competent. *State v. Gondor*, 112 Ohio St.3d 377, 2006–Ohio–6679, 860 N.E.2d 77, ¶ 62. Failure to satisfy either part of the test is fatal to the claim. *Strickland* at 697; *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989).

**{¶43}** Gavin's claim lacks merit for several reasons. First, " '[f]ailing to file a motion to suppress does not constitute ineffective assistance of counsel per se.  To establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question.' " *State v. Williams*, 4th Dist. Scioto No. 10CA3381, 2012–Ohio–6083, ¶ 15, quoting *State v. Brown*, 115 Ohio St.3d 55, 2007–Ohio–4837, 873 N .E.2d 858, ¶ 65.  Claims of ineffective assistance of counsel are rejected when counsel's failure to file a suppression motion was a tactical decision, there was no reasonable probability of success, or there was no prejudice.  *State v. Nields*, 93 Ohio St.3d 6, 34, 752 N.E.2d 859 (2001).

**{¶44}** Second, probation searches conducted pursuant to a probation condition are valid provided that a reasonable suspicion exists that evidence of criminal activity

can be found in the search of the probationer's property. *See, generally, United States v. Knights*, 534 U.S. 112, 120-121, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001); *State v. Sowards*, 4th Dist. Gallia No. 06CA13, 2007-Ohio-4863, ¶ 25 ("It is now generally accepted that a probationer's home may be searched without a warrant and on less than probable cause"). There is no argument that probationer Thompson did not consent as a condition of her community control to a warrantless search of her property, including her Camaro. *See State v. McKinney*, 112 Ohio Misc.2d 30, 32, 750 N.E.2d 1237 (Medina C.P. 2000) (probationer agreed to a search without a warrant of his person, residence or car to ensure that he was complying with his probation).

**{¶45}** Instead, Gavin claims that the officers who searched the car did not have the requisite reasonable suspicion that evidence of a crime could be found in the Camaro. We reject this claim because the police and probation officers had information that Gavin regularly drove the Camaro, that he had just received a shipment of heroin from Chicago, and that he had to sell it fast to pay off a debt he had to Homer, his cousin and drug supplier. This constituted a reasonable suspicion to justify the warrantless probation search of the car.

**{¶46}** Because a motion to suppress would have been meritless, Gavin's trial counsel was not deficient for failing to file it. "We must presume that trial counsel was effective if counsel 'could have reasonably decided that filing a suppression motion would be a futile act, even if there is some evidence to support a motion.' " *State v. Siggers*, 4th Dist. Ross No. 13CA3368, 2014-Ohio-506, ¶ 10, quoting *State v. Walters*, 4th Dist. Scioto No. 12CA949, 2013–Ohio–772, ¶ 20. We overrule Gavin's fourth assignment of error.

## IV. CONCLUSION

**{¶47}** Having sustained Gavin's third assignment of error challenging his conviction for tampering with evidence based on insufficiency of evidence, we reverse and remand the cause to the trial court to vacate that conviction and discharge Gavin on that charge. Having overruled Gavin's first, second, and fourth assignments of error, we affirm the remainder of his convictions and sentence.

JUDGMENT AFFIRMED IN PART.
REVERSED IN PART,
AND CAUSE REMANDED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED.  Appellant and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & McFarland, A.J.: Concur in Judgment and Opinion.

For the Court

BY: _____
William H. Harsha, Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**