[Cite as *State v. Hogue*, 2018-Ohio-3887.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

STATE OF OHIO,                      :

                                :       Case No. 17CA6

     Plaintiff-Appellee,            :

                                  :

     vs.                          :       <u>DECISION AND JUDGMENT</u>
                                  :       <u>ENTRY</u>

CONNIE J. HOGUE,                    :

                                  :

     Defendant-Appellant.          :       **Released: 09/19/18**
_____

<u>APPEARANCES:</u>

Darren L. Meade, Parks and Meade, LLC, Columbus, Ohio, for Appellant.

Benjamin E. Fickel, Hocking County Prosecutor, Logan, Ohio, for Appellee.
_____

McFarland, J.

{¶1} This is an appeal from a Hocking County Court of Common Pleas judgment entry convicting and sentencing Appellant, Connie Hogue, on one count of illegal assembly or possession of chemicals for the manufacture of drugs and one count of aggravated possession of drugs, felonies of the third and fifth degrees, respectively. On appeal, Appellant contends that 1) the guilty verdicts were against the manifest weight of the evidence because the State failed to prove beyond a reasonable doubt that foil found in the vehicle belonged to her, or that she had the intent to manufacture methamphetamine; and 2) the admission of the NPLEx

(National Precursor Log Exchange) records into evidence was without a foundation to properly establish an exception to the prohibition against hearsay evidence, and doing so notwithstanding the lack of objection constituted plain error by the trial court.

{¶2} Because we conclude Appellant's convictions are supported by competent, credible evidence, and are not against the manifest weight of the evidence, her first assignment of error is overruled. Further, because we conclude the trial court did not commit plain error in allowing the NPLEx records to be admitted into evidence, Appellant's second assignment of error is also overruled. Accordingly, the judgment of the trial court is affirmed.

FACTS

{¶3} Appellant, Connie Hogue, was indicted on three felony counts on October 20, 2016. Count one of the indictment charged Appellant with illegal assembly or possession of chemicals (pseudoephedrine and lithium batteries) for the manufacture of drugs (methamphetamine), a third degree felony in violation of R.C. 2925.041(A). Count two of the indictment charged Appellant with aggravated possession of drugs (hydrocodone/acetaminophen), a fifth degree felony in violation of R.C. 2925.11(A). Count three of the indictment charged Appellant with aggravated possession of drugs (methamphetamine), a fifth degree felony in

violation of R.C. 2925.11(A). Each count, as well as the indictment generally, contained forfeiture specifications pursuant to R.C. 2941.1417 alleging Appellant's 2006 Toyota Corolla was used to facilitate the offense and was subject to forfeiture.

{¶4} The indictment arose from activities which occurred on or about August 16, 2016, which began with a call to law enforcement from a Kroger pharmacist advising that Michael T. Heller, Appellant's passenger and co-defendant, had just purchased pseudoephedrine, having previously been blocked from purchasing pseudoephedrine twice. In response to the call, law enforcement followed Appellant's vehicle out of the Kroger parking lot and initiated a traffic stop after observing a de minimis traffic violation. A search conducted pursuant to a K-9 alert on the vehicle yielded a box of pseudoephedrine and a package of lithium batteries. Heller told the detectives that he had just purchased the pseudoephedrine, which he planned to give to Appellant in exchange for methamphetamine. He also told them that Appellant had just separately purchased the lithium batteries. A receipt located with the batteries indicated they had been purchased at Kroger just prior to the traffic stop. Additionally, the search of Appellant's vehicle resulted in the discovery of an aluminum can located just behind the driver's

seat of the vehicle, where Appellant was seated, with residue on it that was later identified as methamphetamine.

{¶5} Appellant was brought to trial before a jury on March 21, 2017. The State presented three witnesses: Dustin J. Robinson, a detective with the Hocking County Sheriff's Office who served as the investigating officer; Michael Heller, who was a passenger in Appellant's vehicle at the time of the traffic stop and who was also a co-defendant; and Trent Woodgeard, a detective with the Hocking County Sheriff's Office and also a K-9 handler. The State introduced NPLEx records related to both Appellant's and Heller's purchases, attempted purchases and blocked purchases of pseudoephedrine.  Appellant presented no witnesses in her defense, nor did she testify.

{¶6} The State's theory at trial, which was supported by the testimony of its witnesses, was that Heller purchased pseudoephedrine at the request of Appellant, which he planned to provide to Appellant in exchange for methamphetamine.  Further, the State argued Appellant herself purchased the lithium batteries, which she intended to use, along with the pseudoephedrine purchased by Heller, to manufacture methamphetamine. The State argued Appellant's intent in assembling these items was to manufacture methamphetamine, which was further evidenced by the fact

that methamphetamine residue was found on an aluminum can in Appellant's vehicle.

{¶7} The State further argued the NPLEx logs demonstrated a pattern of Appellant and Heller both purchasing pseudoephedrine, sometimes at the same time, and being blocked from purchasing on different occasions due to exceeding the maximum amount permitted by law.  Defense counsel argued the NPLEx logs equally indicated that Appellant's purchases could have been consistent with legitimate use of the medication as directed to treat allergies, and that most individuals would not be aware there were limits regarding the amount of pseudoephedrine that can lawfully be purchased. Defense counsel further argued that use of the NPLEx system casts a net far too wide, which unfairly calls into question individuals who may simply be purchasing for legitimate use, and who are taking the medication as directed.

{¶8} The State orally dismissed count two, as well as the forfeiture specifications, during trial and the jury was instructed on the remaining counts of the indictment.  Appellant was ultimately found guilty as charged in the indictment on count one and count three, illegal assembly or

possession of chemicals for the manufacture of drugs and aggravated

possession of drugs, respectively. This timely appeal followed.[1]


ASSIGNMENTS OF ERROR

"I. THE GUILTY VERDICT FOR AGGRAVATED POSSESSION AND ILLEGAL ASSEMBLY OR POSSESSION OF CHEMICALS FOR THE MANUFACTURE OF DRUGS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE FOIL FOUND IN THE VEHICLE BELONGED TO MS. HOGUE, AND THAT MS. HOGUE HAD THE INTENT TO MANUFACTURE METHAMPHETAMINE.

II. THE ADMISSION INTO EVIDENCE OF NPLEX RECORDS WAS WITHOUT A FOUNDATION TO PROPERLY ESTABLISH AN EXCEPTION TO [SIC] PROHIBITION AGAINST HEARSAY EVIDENCE AND DOING SO NOTWITHSTANDING THE LACK OF OBJECTION CONSTITUTED PLAIN ERROR BY THE TRIAL COURT."

ASSIGNMENT OF ERROR I

{¶9} In her first assignment of error, Appellant contends that the jury's

finding of guilty on both the aggravated possession and illegal assembly or

possession of chemicals for the manufacture of drugs charges were against

the manifest weight of the evidence, arguing that the State failed to prove,

beyond a reasonable doubt, that the foil found the in the vehicle belonged to

---

[1] Timothy P. Gleeson originally filed an *Anders* Brief on behalf of Appellant on June 13, 2017, alleging there were no meritorious arguments for review and requesting to withdraw from representation. This Court no longer permits the filing of *Anders* briefs, as explained in *State v. Wilson*, 2017-Ohio-5772, 83 N.E.3d 942 (4th Dist.), but this Court granted Gleeson's request to withdraw and appointed Appellant's current counsel, Darren L. Meade, who sets forth two assignments of error on Appellant's behalf.

her, or that she had the intent to manufacture methamphetamine.  The State

contends that the evidence presented, which included the presence of

pseudoephedrine and lithium batteries in Appellant's vehicle, along with a

receipt for the purchase of the batteries on the same day, the presence of

methamphetamine residue on an aluminum can found right behind the

driver's seat of Appellant's vehicle, which she was driving at the time of the

traffic stop, as well as testimony from Appellant's co-defendant all provided

the jury with enough evidence for reasonable minds to conclude, beyond a

reasonable doubt, that Appellant possessed methamphetamine and also

possessed one or more chemicals needed for the manufacture of

methamphetamine, and intended them to be used for that purpose.

{¶10} When an appellate court considers a claim that a conviction is

against the manifest weight of the evidence, the court must dutifully

examine the entire record, weigh the evidence, and consider the credibility

of witnesses.  The reviewing court must bear in mind however, that

credibility generally is an issue for the trier of fact to resolve. *State v.*

*Wickersham*, 4th Dist. Meigs No. 13CA10, 2015-Ohio-2756, ¶ 25; *State v.*

*Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th

Dist. Ross No. 07CA2953, 2008-Ohio-1744, ¶ 31.  " 'Because the trier of

fact sees and hears the witnesses and is particularly competent to decide

"whether, and to what extent, to credit the testimony of particular

witnesses," we must afford substantial deference to its determinations of

credibility.' " *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929

N.E.2d 1047, ¶ 20; quoting *State v. Konya*, 2nd Dist. Montgomery No.

21434, 2006-Ohio-6312, ¶ 6; quoting *State v. Lawson,* 2nd Dist.

Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).  As explained

in *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d

517:

> " '[I]n determining whether the judgment below is manifestly
> against the weight of the evidence, every reasonable intendment
> must be made in favor of the judgment and the finding of facts.
> * * *
> If the evidence is susceptible of more than one construction, the
> reviewing court is bound to give it that interpretation which is
> consistent with the verdict and judgment, most favorable to
> sustaining the verdict and judgment.' " *Eastley* at ¶ 21; quoting
> *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461
> N.E.2d 1273 (1984), fn.3; quoting 5 Ohio Jurisprudence 3d,
> Appellate Review, Section 60, at 191-192 (1978).

Thus, an appellate court will leave the issues of weight and credibility of the

evidence to the fact finder, as long as a rational basis exists in the record for

its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012-

Ohio-1282, ¶ 24; *accord State v. Howard*, 4th Dist. Ross No. 07CA2948,

2007-Ohio-6331, ¶ 6 ("We will not intercede as long as the trier of fact has

some factual and rational basis for its determination of credibility and weight.”).

{¶11} Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, “ ‘clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.’ ” *Wickersham, supra,* at ¶ 26; quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541; quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  A reviewing court should find a conviction against the manifest weight of the evidence only in the “ ‘exceptional case in which the evidence weighs heavily against the conviction.’ ” *Id*.; quoting *Martin* at 175; *State v. Lindsey*, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

{¶12} Appellant was convicted of a violation of R.C. 2925.11(A). R.C. 2925.11 governs drug possession offenses and provides, in pertinent part, as follows:  “(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.”  Appellant was also convicted of a violation of R.C. 2925.041, illegal assembly or possession of chemicals for manufacture of drugs, which provides:

> “(A) No person shall knowingly assemble or possess one or
> more chemicals that may be used to manufacture a controlled

substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code."

Furthermore, R.C. 2925.041(B) provides:

"In a prosecution under this section, it is not necessary to allege or prove that the offender assembled or possessed all chemicals necessary to manufacture a controlled substance in schedule I or II. The assembly or possession of a single chemical that may be used in the manufacture of a controlled substance in schedule I or II, with the intent to manufacture a controlled substance in either schedule, is sufficient to violate this section."

{¶13} The evidence against Appellant is circumstantial and we begin by recognizing that it is well-established that "a defendant may be convicted solely on the basis of circumstantial evidence." *Wickersham, supra,* at ¶ 39; quoting *State v. Nicely*, 39 Ohio St.3d 147, 151, 529 N.E.2d 1236 (1988). "Circumstantial evidence and direct evidence inherently possess the same probative value." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus (1991).  "Circumstantial evidence is defined as '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved. * * *' " *Nicely*, 39 Ohio St.3d at 150, 529 N.E.2d 1236; quoting Black's Law Dictionary (5 Ed. 1979) 221.

{¶14} As this Court recently observed in *State v. Colley*, 2017-Ohio-4080, 92 N.E.3d 1 (4th Dist.):

> " 'Under the clear requirements of R.C. 2925.041(A), the mere assembly or possession of chemicals that could be used to produce a controlled substance is not sufficient to prove the performance of the criminal act. *State v. Cumberledge*, 11th Dist. [Lake] No. 2010-L-142, 2012-Ohio-3012 []. In addition to possessing the chemical, the state must further demonstrate a present intent on the part of the defendant to actually use the chemical in the future to produce the illegal drug. *Id.*
> * * *
> In most instances, proof of this intent will likely be based upon the defendant's completion of a subsequent act, such as an initial step in the manufacturing process.' " *Colley* at ¶ 62; quoting *State v. Seldon*, 8th Dist. Cuyahoga No. 98429, 2013-Ohio-819.

And, as emphasized by the *Seldon* court at ¶ 24:

> "In cases throughout Ohio where convictions for Assembly or Possession of Chemicals used to Manufacture Controlled Substance were upheld, the state produced evidence from which a jury could conclude beyond a reasonable doubt that the requisite intent to manufacture existed. Such evidence included the following: That the defendant knew how to manufacture methamphetamine, *State v. Stevenson*, 5th Dist. [Perry] No. 09CA16, 2010-Ohio-2060; that the defendant made admissions that he intended to manufacture and/or had participated in the manufacture of methamphetamine, *State v. Smith*, 4th Dist. [Highland] No. 09CA29, 2010-Ohio-4507; that the defendant's prior acts or statements of accomplices and/or other witnesses, demonstrated the defendant's knowing participation in the manufacture of methamphetamine, *Cumberledge*, supra; the defendant, in addition to chemicals, possessed the actual physical equipment needed to manufacture methamphetamine, such as beakers, filters, tubing, electrical tape, copper fittings, a heat source, etc., *State v. Throckmorton*, 4th Dist. [Highland] No. 08CA17, 2009-Ohio-5344, reversed on other grounds; the

defendant possessed or had known access to a
methamphetamine lab, or had injuries consistent with work in a
methamphetamine lab, *State v. Downing*, 12th Dist. No.
CA2009–09–036, [2010-Ohio-5957]; the defendant possessed
quantities of the drug, or known drug delivery devices, i.e.,
syringes, contemporaneous with his possession of the
chemicals, *Throckmorton, supra."*

**{¶15}** Further, *Seldon* held at ¶ 25 as follows:

"This court is not requiring all of the above, we are just
referencing the many methods the state may use to prove an
intent on the part of the accused to manufacture
methamphetamine, none of which were utilized by the state.
The state's entire case is based on Seldon's possession of some
legally possessed items. It has set forth no evidence that Seldon
completed a subsequent act beyond mere possession, no
evidence of Seldon's prior production of the controlled
substance and no evidence that Seldon knew how to
manufacture the drug. *See Cumberledge*, *Stevenson*. In fact,
Seldon testified that he did not know how to manufacture
methamphetamine."

**{¶16}** Here, however, the State presented the jury with the following

evidence: 1) testimony indicating law enforcement received a call from the

Kroger pharmacy alerting them that Michael Heller, who was being

watched, had just made a purchase of pseudoephedrine; 2) NPLEx reports

indicating both Appellant and her co-defendant, Heller, routinely purchased

pseudoephedrine (the admission of which we have determined was not plain

error under Appellant's second assignment of error); 3) testimony indicating

a search of Appellant's vehicle conducted immediately after leaving Kroger

resulted in the discovery of an unopened box of pseudoephedrine and an

unopened package of lithium batteries in Appellant's vehicle; 3) testimony that a receipt found with the batteries indicated the batteries had been purchased that day at Kroger; 4) testimony and lab reports indicating an aluminum can located right behind the driver's seat where Appellant was sitting contained methamphetamine residue; and 5) testimony from Appellant's co-defendant, Heller, stating that he went to the pharmacy, at Appellant' request, to buy pseudoephedrine in order for Appellant to use to make methamphetamine; 6) testimony from Heller that Appellant made a separate purchase of lithium batteries at the time he was purchasing the pseudoephedrine; 7) testimony from Heller that he had purchased pseudoephedrine for Appellant on previous occasions and was provided with methamphetamine in exchange for doing so; and 8) testimony from Heller that on the day they were arrested, he had bought pseudoephedrine for Appellant and was supposed to get methamphetamine from her. Based on our review of the trial transcript, we find there was circumstantial evidence in this case supporting the conclusion that Appellant intended to manufacture methamphetamine.

{¶17} Further, regarding circumstantial evidence of intent, it has been stated that "[i]ntent lies within the privacy of an individual's own thoughts and is not susceptible of objective proof." *Wickersham, supra,* at ¶ 30;

quoting *State v. Garner*, 74 Ohio St.3d 49, 60, 656 N.E.2d 623 (1995). So "intent 'can never be proved by the direct testimony of a third person.' " *State v. Moon*, 4th Dist. Adams App. No. 08CA875, 2009-Ohio-4830, ¶ 20; quoting *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293 (1990). Rather it " 'must * * * be inferred from the act itself and the surrounding circumstances, including the acts and statements of the defendant surrounding the time of the offense.' " *Id.*; quoting *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 41. But "persons are presumed to have intended the natural, reasonable and probable consequences of their voluntary acts." *Garner* at ¶ 60.

{¶18} It is reasonable to infer, from the evidence admitted at trial, that Appellant knew and understood that both pseudoephedrine and lithium were key ingredients used to manufacture methamphetamine. Further, it is logical to infer that Heller was assisting Appellant in assembling the ingredients needed to manufacture methamphetamine, that Appellant would have done so had they not been arrested. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." *State v. Evans–Goode*, 4th Dist. Meigs No. 15CA10, 2016-Ohio-5361, ¶ 8;

R.C. 2901.22(B). "[W]hether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances * * *." *Garner* at 60; quoting *State v. Huff*, 145 Ohio App.3d 555, 563, 763 N.E.2d 695 (1st Dist.2001).

{¶19} Further, the fact that an aluminum can in Appellant's vehicle, that was located directly behind her seat, tested positive for methamphetamine residue further supports this inference. Additionally, the testimony of Heller was sufficient to demonstrate that once the chemicals were purchased, Appellant possessed them, intended to use them to manufacture methamphetamine, and would provide Heller with some of the finished product in exchange for his role of purchasing the pseudoephedrine, consistent with the arrangement they had had in the past. " '[P]ossession' is defined as 'having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.' " *Wickersham, supra,* at ¶ 10; quoting *State v. Gavin*, 4th Dist. Scioto No. 13CA3592, 2015-Ohio-2996, ¶ 35; citing R.C. 2925.01(K). "Possession may be actual or constructive." *Gavin*; quoting *State v. Moon*, 4th Dist. Adams No. 08CA875, 2009-Ohio-4830, ¶ 19; citing *State v. Butler*, 42 Ohio

St.3d 174, 175, 538 N.E.2d 98 (1989) ("[t]o constitute possession, it is sufficient that the defendant has constructive possession").

{¶20} " 'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.' " *Wickersham, supra,* at ¶ 11; quoting *Gavin* at ¶ 36; *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.); quoting *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 39. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *Gavin, supra;* quoting *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362, syllabus (1982); *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 19. For constructive possession to exist, the State must show that the defendant was conscious of the object's presence. *Gavin, supra; Hankerson* at 91; *Kingsland* at ¶ 13. Both dominion and control, and whether a person was conscious of the object's presence, may be established through circumstantial evidence. *Gavin, supra; Brown* at ¶ 19. "Moreover, two or more persons may have joint constructive possession of the same object." *Id.* Here, based on the evidence, it is a logical inference that Appellant had constructive and actual possession and control over her own vehicle, as well

as the pseudoephedrine, lithium batteries, and aluminum can with methamphetamine residue contained within.

{¶21} Appellant's convictions are entirely based upon circumstantial evidence. Her intent was also proven by circumstantial evidence. As set forth above, both are permissible. Appellant and her co-defendant were shown to have a history of purchasing pseudoephedrine, at times even being blocked from purchasing due to exceeding the legal limit. Appellant's vehicle and the contents thereof were within her custody and control at the time of the traffic stop and her arrest. Further, extensive testimony of Appellant's co-defendant demonstrated that Appellant had, in the past, and intended in the future, to provide him with methamphetamine in exchange for him purchasing pseudoephedrine and providing it to her. The jury heard the testimony, considered the evidence presented at trial, and was in the best position to observe the witnesses and evaluate their credibility. Having reviewed the entire record before us, we do not find this to be one of those exceptional cases where the evidence weighs heavily against conviction. Instead, we conclude the evidence supports the findings that Appellant possessed methamphetamine and engaged in the possession or assembly of chemicals (pseudoephedrine and lithium) with an intent to manufacture methamphetamine. Therefore, her convictions are not against the manifest

weight of the evidence.  Accordingly, Appellant's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

{¶22} In her second assignment of error, Appellant contends that the trial court committed plain error in admitting NPLEx records into evidence without requiring a proper foundation to be laid establishing an exception to the prohibition against hearsay.  In arguing plain error, Appellant concedes she did not object to the admission of the NPLEx records.  The State contends the admission of the records did not constitute plain error, and that even if plain error did occur, such error was harmless beyond a reasonable doubt in light of the other evidence introduced at trial.

{¶23} We initially note that the admission or exclusion of evidence is within the sound discretion of the trial court, and the trial court's decision to admit or exclude such evidence cannot be reversed absent an abuse of discretion. *State v. Craft*, 4th Dist. Athens No. 97CA53, 1998 WL 255442, *7 (Internal citations omitted.).  The term "abuse of discretion" connotes more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Id.*; citing *State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715 (1992); *State v. Montgomery*, 61 Ohio St.3d 410, 575 N.E.2d 167 (1991) (reversed on other grounds).  When applying the

abuse of discretion standard of review, we are not free to merely substitute our judgment for that of the trial court. *Craft* at *7; citing *In re Jane Doe 1*, 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181 (1991); citing *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990). We also note, however, that because Appellant did not object to the admission of the NPLEx records at trial, she has waived all but plain error.

{¶24} Failure to object to an alleged error waives all but plain error. *State v. Keeley*, 4th Dist. Washington No. 11CA5, 2012–Ohio–3564, ¶ 28. Notice of Crim.R. 52(B) plain error must be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Rohrbaugh*, 126 Ohio St.3d 421, 2010–Ohio–3286, 934 N.E.2d 920, ¶ 6; *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. To find plain error, the outcome of trial must clearly have been otherwise. *State v. McCausland*, 124 Ohio St.3d 8, 2009–Ohio–5933, 918 N.E.2d 507, ¶ 15; *State v. Braden*, 98 Ohio St.3d 354, 2003–Ohio–1325, 785 N.E.2d 439, ¶ 50.

{¶25} Further, and importantly, not only did Appellant fail to object to the admission of the NPLEx reports, she appears to have relied upon the contents of the reports as part of her trial strategy. For instance, defense counsel conducted extensive cross examination of Detective Robinson

regarding the contents of the NPLEx report detailing Appellant's

pseudoephedrine purchases.  Her strategy was clearly to demonstrate that

Appellant's purchase history could be construed as someone buying

pseudoephedrine consistent with legitimate use, as directed, for the treatment

of allergies.  Further, as early as opening argument, Appellant's counsel

described to the jury the idea of a fishing net that is cast so far that dolphins

unintentionally get caught up in the net.  Counsel stated that her client "is the

dolphin caught up in the net.  She is not the intended target of the

investigation.  She just happened to be with the tuna."  Counsel then told the

jury to watch for the net during trial.

{¶26} Later, during closing arguments, counsel drew an analogy

between the overbroad fishing nets and the NPLEx system, stating to the

jury as follows:

> "So the two things that I talked about at my opening statement
> was the NPLEx and I wanted you [sic] see the net.  I wanted
> you to see how a perfectly innocent person can get caught up in
> it and actually attempt to purchase beyond their knowledge – or
> beyond their limit and that an average person is really not going
> to know where they are on their limit.  So I wanted you to
> understand that."

Clearly defense counsel wanted the jury to consider and analyze the contents

of the NPLEx reports at issue, as part of her trial strategy, to demonstrate the

theory that Appellant was purchasing pseudoephedrine in reasonable

quantities for a legitimate and legal use. To this extent, we conclude any error in the admission of the NPLEx reports was invited error.

{¶27} Under the invited error doctrine, "a party is not entitled to take advantage of an error that he himself invited or induced." *State v. Doss*, 8th Dist. Cuyahoga No. 84433, 2005-Ohio-775, ¶ 5; quoting *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002-Ohio-4849, 775 N.E.2d 517, ¶ 27; *State ex rel. The V. Cos. v. Marshall*, 81 Ohio St.3d 467, 471, 692 N.E.2d 198 (1998). The doctrine precludes a defendant from making "an affirmative and apparent strategic decision at trial" and then complaining on appeal that the result of that decision constitutes reversible error. *Doss* at ¶ 7; quoting *United States v. Jernigan*, 341 F.3d 1273, 1290 (11th Cir.2003). The doctrine applies when defense counsel is "actively responsible" for the trial court's error. *State v. Campbell*, 90 Ohio St.3d 320, 324, 738 N.E.2d 1178 (2000). Therefore, Appellant's second assignment of error is overruled.

{¶28} Accordingly, having no merit in either of the assignments of error set forth by Appellant, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED**.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Abele, J.: Concur in Judgment and Opinion.

For the Court,


BY: _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**