[Cite as *State v. Hoskins*, 2019-Ohio-4842.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 19CA1093 |
| | : | |
| vs. | : | |
| | : | DECISION AND |
| BOBBI C. HOSKINS, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | |

_____
APPEARANCES:

Bruce S. Wallace, Wallace Law Firm LLC, Mt. Orab, Ohio, for Appellant.

David Kelley, Adams County Prosecuting Attorney, and Michele L. Harris, Assistant Prosecuting Attorney, West Union, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} This is an appeal from a conviction for domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25(A), which resulted after a trial to the bench. On appeal, Appellant, Bobbi Hoskins, contends 1) that the trial court erred by allowing her neighbor, Kylie Walters, to testify as to what the victim, Freddie Hoskins, had said to her under the excited-utterance exception to the hearsay rule; and 2) that her conviction for domestic violence under R.C. 2919.25(A) was against the manifest weight of the evidence and was not supported by sufficient evidence. Because we conclude the victim's statement was

admissible as an excited utterance through the testimony of Kylie Walters, we cannot conclude the trial court abused its discretion in admitting the statement into evidence. Thus, we find no merit to Appellant's first assignment of error and it is overruled. Further, in light of our determination that Appellant's conviction was supported by sufficient evidence and was not against the manifest weight of the evidence, we find no merit to her second assignment and it is also overruled. Accordingly, having found no merit to the assignments of error raised by Appellant, the judgment of the trial court is affirmed.

FACTS

{¶2} Appellant, Bobbi Hoskins, was charged of one count of domestic violence on October 29, 2018. The complaint stemmed from an incident that occurred on October 27, 2018, between her and her husband, Freddie Hoskins, the victim herein, while at their home. The record indicates the pair got into a verbal altercation which escalated to a physical altercation and ended with the victim leaving the residence and walking to a neighbor's house. The neighbor, Kylie Walters, called dispatch and law enforcement responded to the scene shortly thereafter. After interviewing both Appellant and her husband at the scene, Appellant was arrested and charged with domestic violence.

{¶3} Appellant was appointed counsel and the matter proceeded to a bench trial on January 14, 2019. The State presented three witnesses that included

Freddie Hoskins (the victim), Kylie Walters (the neighbor), and Deputy Newland (the deputy who responded to the call). The victim essentially refused to cooperate with the State at trial by first claiming he did not believe he was required to testify against his wife and then by answering that he either did not know or did not recall to most of the questions posed by the State. However, Kylie Walters testified that the victim knocked on her door on the night of the incident and that he appeared to be in distress, seemed "kind of upset," and was bleeding. She testified that when she asked him what had happened, he stated that he had gotten into a small argument with his "other half" and had gotten hit. The victim's statement was admitted into evidence as an excited utterance over the objection of Appellant.

{¶4} Deputy Newland also testified at trial and the video from the bodycam he was wearing when he responded to the scene was played for the trial court and admitted into evidence. Deputy Newland testified, consistent with the contents of the video, that Appellant stated he and his wife had been in a verbal argument and that she pushed him and he fell over a table, sustaining an injury to his nose. Photographs of the victim's face depicting the injury to his nose were admitted into evidence without objection.

{¶5} The video also contained footage of Appellant and the statements she made to law enforcement that night. In the video, Appellant admitted to law enforcement that she did push the victim, causing him to fall over a table, but that

she pushed him only after he pushed her and twisted her finger. Appellant also stated in the video that the victim always made fun of her and that he had been drinking on the night in question. Appellant explained that the verbal argument started in the basement and then continued upstairs and into the kitchen. After the victim pushed her and hurt her finger by twisting it, Appellant pushed him and he fell over a table in the living room. Appellant denied hitting the victim with anything thereafter and instead said he must have hurt his nose when he fell. Appellant testified on her own behalf at trial and her testimony was consistent with the statements she gave to law enforcement on the night of the incident, as shown on the video.

{¶6} After considering the evidence, the trial court found Appellant guilty of one count of domestic violence, as charged in the complaint, and sentenced her to 180 days in jail, with 177 days suspended and credit for three days served. Appellant was also placed on community control for a period of one year and was ordered to complete sixteen hours of community service. It is from the trial court's judgment entry, dated March 18, 2019, that Appellant now brings her timely appeal setting forth two assignments of error for our review.

ASSIGNMENTS OF ERROR

I.    "THE TRIAL COURT ERRED BY ALLOWING KYLIE WALTERS TO TESTIFY AS TO WHAT FREDDIE HOSKINS HAD SAID TO HER UNDER THE EXCITED UTTERANCE EXCEPTION TO THE HEARSAY RULE."

II.    "A CONVICTION OF DOMESTIC VIOLENCE UNDER OHIO REVISED CODE SECTION 2919.25(A) WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND INSUFFICIENT TO SUPPORT A CONVICTION."

ASSIGNMENT OF ERROR I

(¶7} In her first assignment of error, Appellant contends the trial court erred by allowing her neighbor, Kylie Walters, to testify as to what the victim, Freddie Hoskins, said to her based upon the excited-utterance exception to the rule prohibiting the admission of hearsay. Appellant argues that based upon the evidence, the victim did not appear to show nervous excitement stemming from a startling occurrence, as required under the four-part test used in determining the admissibility of statements as excited utterances. The State responds by arguing that the trial court made a reasonable determination and did not abuse its discretion in allowing the victim's statement to be admitted into evidence as an excited utterance. We begin our analysis with a review of the proper standard to be applied when considering whether a trial court erred in admitting this evidence.

{¶8} In general, " '[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court.' " *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 87, quoting *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. "Thus, absent an abuse of discretion, an appellate court will not disturb a trial court's ruling regarding the

admissibility of evidence." *State v. Leasure*, 2015-Ohio-5327, 43 N.E.3d 477, ¶ 32 (4th Dist.). " 'A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary.' " *State v. Keenan*, 143 Ohio St.3d 397, 2015-Ohio-2484, 38 N.E.3d 870, ¶ 7, quoting *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34. Although an abuse of discretion standard of review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court, an abuse of discretion includes a situation in which a trial court did not engage in a "sound reasoning process." *Darmond* at ¶ 34.

{¶9} " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). "Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio." Evid.R. 802. The pertinent exception here is Evid.R. 803(2), the excited-utterance exception, which provides that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule.

{¶10} In Ohio, courts apply a four-part test to determine the admissibility of statements as an excited utterance, as follows:

"(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement of declaration spontaneous and unreflective,

(b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties so that such domination *continued* to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs,

(c) that the statement or declaration related to such startling occurrence or the circumstances of such starling occurrence, and

(d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration."

(Emphasis sic.) *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 166, quoting *Potter v. Baker*, 162 Ohio St. 488, 124 N.E.2d 140 (1955),

paragraph two of the syllabus, followed and approved by *State v. Taylor*, 66 Ohio

St.3d 295, 612 N.E.2d 316 (1993), fn. 2.  The rationale of the rule is that

circumstances surrounding the excited statement prevent the declarant from using

reflective processes to fabricate a statement.

As explained in *State v. Jones*, *supra*:

"There is no *per se* amount of time after which a statement can no

longer be considered to be an excited utterance.  The central

requirements are that the statement must be made while the declarant

is still under the stress of the event and the statement may *not* be a

result of reflective thought.

Therefore the passage of time between the statement and the event is

relevant but not dispositive of the question.  '[E]ach case must be

decided on its own circumstances, since it is patently futile to attempt

to formulate an inelastic rule delimiting the time limits within which

an oral utterance must be made in order that it be termed a

spontaneous exclamation.' "  (Emphasis sic.)  *State v. Jones*, *supra,* at

168, quoting *State v. Taylor*, *supra*, 303, quoting *State v. Duncan*, 53 Ohio

St.2d 215, 219-220, 373 N.E.2d 1234 (1978).

{¶11} Appellant primarily contends that element (b) of the four-part test was

not met here.  Appellant argues that because the victim had to cross the street and

walk down one house, on foot, "likely enough time had lapsed by the time he arrived at Kylie Walters [sic] home to lose any remaining nervous excitement from the argument." However, based upon the following, we reject Appellant's argument.

{¶12} The record presently before us indicates the victim walked to his neighbor's house, knocked on the door and asked Kylie Walters if her father (who was a deputy) was home. Walters informed the victim her father was not home, but Walters, who was a trained dispatcher, began to ask the victim some questions. The trial transcript includes the following testimony by Walters:

Q:  So, um, how to [sic] Mr. Hoskins appear to you?

A:  Um, he came, they live across the road and then down one house. So, he came up, he had a small cut to his forehead. He seemed in distress.

Q:  Alright. Did he appear, um excited or upset?

A:  Yeah, he was kind of upset about it.

Q:  Alright. Was he bleeding?

A:  Yes.

Q:  Alright. And, um, he asked you to speak with your dad, but your dad wasn't at home?

A:  No, he was on duty.

Q:  Alright.  So, uh, did he say why [sic] he needed?

A:  No, he didn't, but I further question [sic], you know, why are you showing up at my house and what's going. [sic]

Q:  Alright.  And what'd he say?

A:  Um, he said that him.

Attorney Drinnon:  Objection.

Court:  Overruled.  This may be hearsay but it's an excited utterance. So, go ahead and tell me what he said.

Thereafter the direct examination of the witness Kylie Walters by Assistant Prosecuting Attorney Michele Harris continued.

A:  Um, he just came to my house.  I can't remember word for word, but pretty much asking for my father.  And he just said that him and his other half got into a small argument and that he was hit.

Q:  Did he indicate what he was hit with?

A:  Um, no.  I did ask questions like I normally would with my job. You know, if there's any weapons in the house[?]  What did you get hit with?  Was it an item or a fist?  I was unsure and he wasn't sure either.

Q:  Okay.  Alright, so at that point you've [sic] placed a, basically a dispatch call via the admin line?

A: Yeah.

{¶13} Thus, Walters testimony indicated that the victim appeared to be distressed, was "kind of upset," was bleeding, and stated he had gotten into an argument with his "other half" and had gotten hit. Although there is no evidence in the record regarding the time of the argument compared to the time the victim made the statements at issue, it appears the victim left his home and immediately walked to Walters' home, which was across the street and down one house. Further, a review of the officer's bodycam video reveals that the houses on the street are situated relatively close together. Thus, there is simply no indication of any significant lapse of time between the two events. Based upon these facts, we believe the trial court could reasonably infer that a brief period of time elapsed between the victim's argument with Appellant and when he arrived at the Walter's residence. *See State v. Phillips*, 4th Dist. Scioto No. 18CA3832, 2018-Ohio-5432, ¶ 50. As such, we conclude that all four elements of the four-part test have been met here, including the timing requirement contained in element (b).

{¶14} Appellant further contends that because Walters' testimony indicated the victim "only seemed 'kind of' upset," and had only one small cut to his forehead, that the victim did "not appear to be someone who showed a nervous excitement stemming from a startling occurrence as required by the well-recognized four-part test." However, contrary to Appellant's argument, Walters

testified that the victim "seemed in distress" and was still bleeding when he made the statement at issue. Although not mentioned by the parties, Walters solicited the victim's statement after questioning him. The Supreme Court of Ohio has held that:

> "The admission of a declaration as an excited utterance is not precluded by questioning which: (1) is neither coercive nor leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties." *State v. Felts*, 2016-Ohio-2755, 52 N.E.3d 1223, ¶ 59, quoting *State v. Wallace*, 37 Ohio St.3d 87, 524 N.E.2d 466 (1988), paragraph two of the syllabus (involving the questioning of a child by her mother); *State v. Jones*, *supra*, at ¶ 170.

Thus, the fact that the victim made the statement at issue in response to being asked a question does not preclude its admission into evidence as an excited utterance.

{¶15} Additionally, as we explained in *Felts*, "[o]ther relevant factors generally indicating whether the declarant was in a sufficient state of excitement or stress when making the statement include outward indicia of emotional state, like tone of voice, accompanying actions, and general demeanor. *Felts* at ¶ 57; citing

*State v. F.R.*, 2015-Ohio-1914, 34 N.E.3d 498, ¶ 28, (10th Dist.).  Walters'

testimony described the victim's emotional state as distressed and "kind of upset"

and indicated that the victim was bleeding at the time.  Thus, contrary to

Appellant's argument, Walters' testimony suggested the victim was still in a state

of nervous excitement at the time he made the statement, and thus his statement

was spontaneous and unreflective, as contemplated under the four-part test set

forth above.  As such, we also reject this portion of Appellant's argument.

{¶16} In light of the foregoing, we cannot conclude the trial court abused its

discretion in ruling that the victim's statement to Kylie Walters was admissible

pursuant to the excited utterance exception to the general rule prohibiting the

admission of hearsay.  Accordingly, we find no merit to Appellant's first

assignment of error and it is overruled.

ASSIGNMENT OF ERROR II

{¶17} In her second assignment of error, Appellant contends that her

conviction for domestic violence in violation of R.C. 2919.25(A) was against the

manifest weight of the evidence and was not supported by sufficient evidence.

More specifically, Appellant seems to limit her argument to the question of

whether the evidence presented was sufficient to establish that she caused physical

harm to the victim.  The State responds by arguing that each of the State's

witnesses testified that the victim had a visible injury to his face and photographs

that were admitted into evidence without objection depicted the injury as well. Furthermore, statements made by the victim to law enforcement indicated Appellant pushed the victim, causing him to fall over a table, and resulting in the injury. Thus, the State argues that all of the essential elements of the crime of domestic violence were proven beyond a reasonable doubt and that Appellant's conviction was not against the manifest weight of the evidence.

{¶18} "When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction." *State v. Puckett*, 191 Ohio App.3d 747, 2010–Ohio–6597, 947 N.E.2d 730, ¶ 34, citing *State v. Pollitt*, 4th Dist. Scioto No. 08CA3263, 2010–Ohio–2556, ¶ 15. " ' "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." ' " *Puckett* at ¶ 34, quoting *State v. Lombardi*, 9th Dist. Summit No. 22435, 2005–Ohio–4942, ¶ 9, in turn quoting *State v. Roberts*, 9th Dist. Lorain No. 96CA006462, 1997 WL 600669 (Sept. 17, 1997). Therefore, we first consider whether Appellant's conviction was against the manifest weight of the evidence.

{¶19} "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and

determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009–Ohio–5390, ¶ 24, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541. A reviewing court "may not reverse a conviction when there is substantial evidence upon which the trial court could reasonably conclude that all elements of the offense have been proven beyond a reasonable doubt." *State v. Johnson*, 58 Ohio St.3d 40, 42, 567 N.E.2d 266 (1991), citing *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus (1988).

{¶20} Even in acting as a thirteenth juror we must still remember that the weight to be given evidence and the credibility to be afforded testimony are issues to be determined by the trier of fact. *State v. Frazier*, 73 Ohio St.3d 323, 339, 652 N.E.2d 1000, citing State v. Grant, 67 Ohio St.3d 465, 477, 620 N.E.2d 50. The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984) (per curiam). Thus, we will only interfere if the fact finder clearly lost its way and created a manifest miscarriage of justice. Moreover, "[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges

on the court of appeals panel reviewing the case is required." *Thompkins* at paragraph four of the syllabus, construing and applying Section 3(B)(3), Article IV of the Ohio Constitution.

{¶21} Appellant was convicted of one count of domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." "[A] person acts knowingly, when regardless of his purpose, he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶22} In support of her argument that the evidence introduced at trial failed to sufficiently prove that she caused physical harm to the victim, Appellant points to the victim's trial testimony which was inconsistent on the issue of how he sustained a bloody nose on the date in question. For instance, the victim testified that he didn't recall how his nose was injured, that he didn't recall falling over a table, and that he could have injured his nose when he was in the basement wrestling with his son. Appellant argues that the victim's trial testimony coupled with the fact he had consumed alcohol on the night of the incident rendered him a less than credible witness. Appellant also points to the fact that there is no

evidence in the record indicating the victim sought medical treatment for his alleged injury.

{¶23} However, although it was clear the victim did not want to testify against Appellant at trial and that his trial testimony failed to indicate Appellant had caused him any physical injury, the bodycam video admitted into evidence and played for the court demonstrated otherwise. A review of the video footage taken on the night of the incident reveals that the victim informed law enforcement that Appellant pushed him, causing him to fall over a table, and then hit him with something, possibly a remote control, injuring his nose. Further, the victim's neighbor testified regarding her encounter with the victim on the night of the incident. She testified that the victim came to her door and appeared distressed, seemed kind of upset and was bleeding. When she asked him what had happened, he stated he had gotten into a small argument with his "other half" and had been hit. As discussed at length above, this statement was admissible at trial as an excited utterance. Additionally, photographs of the victim's face were admitted at trial and depict what appears to be dried blood or scratches on the victim's nose.

{¶24} Thus, after examining the record, we find the State presented substantial evidence upon which the trier of fact reasonably could conclude beyond a reasonable doubt that all of the essential elements of the crime in which Appellant was convicted had been established. Based upon the testimony set forth

above and admitted at trial, as well as the photographic evidence of physical injuries, the trial court reasonably concluded that Appellant knowingly caused physical harm to another, the victim herein, Appellant's husband.

{¶25} Further, in light of the above evidence, we cannot find the trier of fact somehow lost its way or that evidence weighed heavily against Appellant's conviction. Although Appellant denied hitting the victim with anything, she admitted that she pushed the victim down, causing him to fall over a table. The photographic evidence demonstrates the victim's nose had been injured and bleeding on the night of the incident. The video statement provided by the victim that night, as well as the victim's statement admitted through the testimony of Kylie Walters, indicated the victim had been injured and that Appellant inflicted the injury. The trial court obviously found that version of events to be credible. It was within the province of the trial court, as the finder of fact, to reject the victim's trial testimony and instead accept the victim's version of events as stated on the bodycam video as the more credible version of events, especially considering that version of events was consistent with the testimony of the neighbor, Kylie Walters.

{¶26} As set forth above, the trial court was in the best position to view Appellant and the victim at trial, observe their demeanor, gestures, and voice inflections, and to weigh their respective credibility. Thus, despite the victim's refusal to cooperate at trial, other competent, credible evidence admitted at trial

demonstrated that Appellant inflicted the injury to the victim's nose. Additionally, we reject Appellant's suggestion that because the victim did not seek medical treatment for his injury that there was insufficient evidence of actual injury. Appellant has cited no authority for the proposition that an injury cannot constitute physical harm for purposes of domestic violence in the absence of evidence indicating medical treatment was sought.

{¶27} Accordingly, we find that Appellant's conviction was not against the manifest weight of the evidence. Thus, we necessarily also conclude that sufficient evidence supports her conviction. We therefore overrule Appellant's second assignment of error. Having found no merit in either of the assignments of error raised by Appellant, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J. & Hess, J.:  Concur in Judgment and Opinion.

For the Court,

BY:  _____
Jason P. Smith
Presiding Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**