[Cite as *State v. Barnes*, 2020-Ohio-3943.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                          :
                                        :
    Plaintiff-Appellee,                 :        Case No. 19CA3687
                                        :
vs.                                     :
                                        :        DECISION AND
DAJOHN M. BARNES,                       :        JUDGMENT ENTRY
                                        :
    Defendant-Appellant.                :
_____

APPEARANCES:

Timothy Young, Ohio Public Defender, and Addison M. Spriggs, Assistant State
Public Defender, Columbus, Ohio, for Appellant.

Jeffrey C. Marks, Ross County Prosecuting Attorney, and Pamela C. Wells, Ross
County Assistant Prosecuting Attorney, Chillicothe, Ohio, for Appellee.
_____

Smith, P.J.

{¶1} This is an appeal from a Ross County Common Pleas Court judgment

of conviction and sentence. Appellant, DaJohn Barnes, was found guilty by a jury

of one count of possession of heroin, a first-degree felony in violation of R.C.

2925.11, with a major drug offender specification, as well as one count of

possession of cocaine, a first-degree felony in violation of R.C. 2925.11. He was

also convicted of one count of trafficking in heroin, a fifth-degree felony in

violation of R.C. 2925.03. On appeal, Barnes contends 1) that his convictions for

possession of heroin and possession of cocaine are not supported by sufficient evidence; 2) that his convictions for possession of drugs are against the manifest weight of the evidence; and 3) that the trial court erred when it failed to determine if he was a major drug offender in the sentencing entry.

{¶2} Because we conclude that Barnes' convictions for possession of both heroin and cocaine are supported by sufficient evidence and are not against the manifest weight of the evidence, we find no merit to his first or second assignments of error. Thus, they are both overruled. Further, because we find the trial court did not err in sentencing Barnes, his third assignment of error is also overruled. Accordingly, the judgment of the trial court is affirmed.

FACTS

{¶3} On February 22, 2019, Appellant was indicted on five felony drug-related charges. The indictment alleged as follows: 1) that Barnes possessed heroin, a first-degree felony in violation of R.C. 2925.11, along with a major drug offender specification (count one); 2) that Barnes possessed cocaine, a first-degree felony in violation of R.C. 2925.11 (count two); 3) that Barnes trafficked in heroin, a fifth-degree felony in violation of R.C. 2925.03 (count three); 4) that Barnes was complicit in the aggravated trafficking of drugs, a fourth-degree felony in violation of R.C. 2923.03 (count four); and 5) that Barnes was complicit in the aggravated trafficking of drugs, a fourth-degree felony in violation of R.C. 2923.03 (count

five). The indictment stemmed from an investigation involving two controlled buys and the execution of a search warrant that took place between September 19-21, 2018. Barnes pleaded not guilty to the charges and the matter proceeded to a jury trial on July 9, 2019.

{¶4} The State presented several witnesses at trial, including Hans Fischer, the property manager of the apartment building where the search warrant was executed, and Steven Livingston, a confidential informant who works with the Chillicothe Police Department. The State also presented testimony by Detective Samantha Taczak, who works for the Chillicothe Police Department, Detective Ben Rhoads, who works for the Special Investigation Unit of the Chillicothe Police Department, Sergeant John Silvey, who works for the Criminal Patrol Investigation Unit of the Ohio State Highway Patrol, and Detective Bud Lytle, who also works with the Chillicothe Police Department. Finally, the State presented the testimony of Krystal Soles and Laurel Heinit, both forensic scientists in the Drug Chemistry Section of the Ohio Bureau of Investigation (hereinafter "BCI").

{¶5} Detective Samantha Taczak testified that she set up two controlled drug buys between Barnes and Steven Livingston, a confidential informant, on September 19th and September 20th, 2018. She testified that on the day the first controlled buy was planned, on September 19th, Barnes was stopped while driving and she was involved in the stop. She testified that during the stop, Barnes told her

that he was staying at the Meyer Motel, which is actually an apartment complex located at 799 Eastern Avenue in Chillicothe, Ohio.  Her testimony indicated that although Barnes was searched during the stop, no drugs were found.  Taczak also testified regarding a controlled buy that took place the next day, on September 20th.  She testified that she observed Barnes exit an apartment located at 799 Eastern Avenue, get into a vehicle and travel to the Certified Station, which was the location where the confidential informant was waiting to purchase drugs as part of the controlled buy.  Based upon the information gained from the two controlled buys, she obtained a search warrant for the apartment where Barnes was staying.  The search warrant was executed by the SWAT team the next day, on September 21st.  Taczak testified that she interviewed Barnes at the location of the search and that Barnes admitted he had sold drugs for Domonique Brown a few times to make some money.  She also testified that during the search Barnes stated that if anything illegal was found it belonged to Brown.

{¶6} Steven Livingston, the confidential informant assisting in the controlled buys, testified that he planned to purchase either heroin or fentanyl from Barnes at the Certified Station on September 19, 2018, but Barnes texted him and told him he had been pulled over and said to "hold on."  Livingston testified that someone named Terrill Nesbit then showed up instead and sold him drugs.  Livingston  testified that he was also involved in the controlled buy that took place

the next day, on September 20, 2018.  He testified that he either texted or called Barnes and then met him at the Certified Station and purchased "fentanyl heroin" with marked funds.  He also testified that he had had contact with Barnes a couple of times a week in September of 2018 and that Barnes was residing on Eastern Avenue.

{¶7} Detective Ben Rhoads testified that he was also involved in the controlled buys and the search of the apartment located at 799 Eastern Avenue.  He testified that when he made entry into the apartment only Barnes was present.  He testified that upon entry he noted digital scales with white residue on them as well as gloves on the kitchen table, in plain view.  He also immediately saw what he knew to be a "kilo press" that was mounted to the wall between the kitchen and the living room.  He explained that a kilo press "condenses a powder into a brick form so that you can transport it more easily."  He further testified that bags of drugs were found in a Lazy Susan in the kitchen, a bottle of pills was found in a cereal box sitting on top of the refrigerator, and the marked funds from the controlled buy conducted the previous day were found in Barnes' wallet.  Finally, he testified that at the end of the search Barnes took multiple bags of clothes and shoes, most of which came from the bedroom, as well as an Xbox that was in the living room.

{¶8} Sergeant John Silvey also testified regarding his involvement with the controlled buys and the search.  He testified that he searched the nightstand located

in the bedroom of the apartment and found a baggy containing a powdered substance. He also testified that he saw a large kilo press and explained that it can be used to press powder into tablets.

{¶9} Hans Fischer testified as well. He testified that the apartment in question had been rented to Char Barnes, Barnes' mother. He testified that he had only seen Barnes there once or twice, that he had not seen any extra cars parked in the lot, and he had not noticed anyone staying overnight. However, he also testified that he was not there all the time and that he had several different properties to manage. During his testimony he reviewed the statement he gave to police on the day of the search, which indicated he had stated he had seen Barnes at the apartment for a few weeks. He also testified he didn't remember seeing Domonique Brown at the apartment but qualified his testimony by stating he is very busy and doesn't see everyone that comes and goes.

{¶10} Finally, Krystal Soles and Laurel Heinit from BCI testified. They testified that the substances submitted for testing were identified as fentanyl, heroin, cocaine, six simondium morphine, and xylazine, which is a large animal tranquilizer. Specifically, the substances submitted for testing that were found in the apartment consisted of approximately 140.09 grams of heroin and fentanyl, 9.19 grams of heroin and fentanyl, 0.26 grams of heroin and fentanyl, 0.13 grams of fentanyl, and 38.40 grams of cocaine, six simondium morphine, heroin and

fentanyl in the form of 335 "singly scored round tablets." After presenting the testimony of the forensic scientists the State rested its case and admitted its exhibits.

{¶11} Thereafter, counsel for Barnes made a Crim.R. 29 motion for acquittal which was denied by the trial court. The defense then went forward with its case, presenting the testimony of Charlease Barnes (Barnes' mother), Ashley Shears (Barnes' girlfriend), and Barnes himself. Charlease Barnes testified that she had not been living at her apartment for about two months at the time it was raided. She explained that Domonique Brown, her friend's son, was living there and paying her rent. She testified that Barnes only used the apartment on occasion when he was in town to visit his daughter. She stated that if he spent the night he would sleep on the couch and that he didn't keep any of his belongings there. She claimed during her testimony that Brown's clothes were still at her apartment when she returned to it and that her landlord was present when he packed them up. She admitted during her testimony that she had prior convictions for forgery, theft, and felonious assault.

{¶12} Ashley Shears testified that her understanding regarding the apartment was that Barnes' mother had moved out and that Brown was living there. She testified that she lived in Mansfield and that because Barnes didn't have a vehicle, she would drive him to Chillicothe to visit his daughter. She explained

that she would sometimes stay overnight with Barnes in his mother's apartment, and that on those occasions they would sleep in the bedroom.

{¶13} Finally, Barnes testified on his own behalf. He admitted during his testimony that he had been previously incarcerated for robbery and that while he was out on probation he was convicted of felony possession of drugs and was returned to prison. He testified that he had recently been paroled to his father's house in Columbus but that all of his belongings were at Shears' house in Mansfield. He testified that he had a drug addiction and admitted to selling drugs to Steven Livingston on September 19, 2018. He testified that he cooperated during the search and that he had no knowledge of the drugs found in the apartment because he didn't live there. He denied seeing scales, gloves, and baggies on the kitchen table and testified that he thought the kilo press mounted on the wall was a tire jack. He also denied telling Detective Taczak that he had sold drugs for Brown a few times. He further testified that the bags of clothing he removed from the apartment belonged to Brown and that he only removed them because he was told to.

{¶14} After closing arguments the jury was given instructions which included instructions on both actual and constructive possession and complicity. After deliberations the jury returned not guilty verdicts on counts four and five but returned guilty verdicts on counts one, two and three. With regard to count one,

the jury specifically found that the amount of heroin possessed by Barnes was equal to or exceeded 100 grams of heroin. Further, with respect to count two, the jury specifically found that the amount of cocaine possessed by Barnes exceeded 27 grams but was less than 100 grams.

{¶15} The trial court ultimately sentenced Barnes to an eleven-year prison term on count one, which constituted a maximum, mandatory sentence. It further sentenced Barnes to a mandatory six-year prison term on count two and a twelve-month prison term on count three. The trial court ordered all three prison terms to be served consecutively for an aggregate prison term of eighteen years. Appellant thereafter filed his timely appeal, setting forth three assignments of error for our review.

## ASSIGNMENTS OF ERROR

I. "MR. BARNES' CONVICTION FOR POSSESSION OF HEROIN AND POSSESSION OF COCAINE IS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

II. "MR. BARNES' CONVICTIONS FOR POSSESSION OF DRUGS ARE NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE."

III. "THE TRIAL COURT ERR [SIC] WHEN IT FAILED TO DETERMINE IF MR. BARNES WAS A MAJOR DRUG OFFENDER IN THE SENTENCING ENTRY."

## ASSIGNMENTS OF ERROR I AND II

{¶16} For ease of analysis, we address Barnes' first two assignments of error in conjunction with one another. In his first assignment of error, Barnes contends that his convictions for possession of heroin and cocaine are not supported by sufficient evidence. In his second assignment of error, Barnes contends his convictions for possession of drugs are not supported by the manifest weight of the evidence. Appellant primarily argues under both of these assignments of error that he did not live at the apartment where the drugs were found and that he did not actually or constructively possess the drugs. The State contends, however, that each element of the offenses of possession of heroin and cocaine were sufficiently proven, and that the record contains "a tremendous amount of compelling circumstantial evidence that [Barnes] constructively possessed the drugs found pursuant to the search warrant and that he lived at the apartment where the drugs were found." We begin by considering the proper standard of review when analyzing whether convictions are supported by sufficient evidence or are against the manifest weight of the evidence.

## STANDARD OF REVIEW

{¶17} "When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction." *State v. Puckett*, 191 Ohio

App.3d 747, 2010-Ohio-6597, 947 N.E.2d 730, ¶ 34, citing *State v. Pollitt*, 4th Dist. Scioto No. 08CA3263, 2010-Ohio-2556, ¶ 15. " ' "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." ' " *Puckett* at ¶ 34, quoting *State v. Lombardi*, 9th Dist. Summit No. 22435, 2005-Ohio-4942, ¶ 9, in turn quoting *State v. Roberts*, 9th Dist. Lorain No. 96CA006462, 1997 WL 600669 (Sept. 17, 1997). Therefore, we first consider whether Appellant's conviction was against the manifest weight of the evidence.

{¶18} "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 24, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541. "[A] reviewing court may not reverse a conviction when there is substantial evidence upon which the trial court could reasonably conclude that all elements of the offense have been proven beyond a reasonable doubt." *State v. Johnson*, 58 Ohio St.3d 40, 42, 567 N.E.2d 266 (1991), citing *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus (1988).

{¶19} "Even in acting as a thirteenth juror we must still remember that the weight to be given evidence and the credibility to be afforded testimony are issues to be determined by the trier of fact." *State v. Hoskins*, 4th Dist. Adams No. 19CA1093, 2019-Ohio-4842, ¶ 20, citing *State v. Frazier*, 73 Ohio St.3d 323, 339, 652 N.E.2d 1000, citing *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50. The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984) (per curiam). Thus, we will only interfere if the fact finder clearly lost its way and created a manifest miscarriage of justice. Moreover, "[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." *Thompkins* at paragraph four of the syllabus, construing and applying Section 3(B)(3), Article IV of the Ohio Constitution.

LEGAL ANALYSIS

{¶20} Here, Barnes was convicted of two counts of drug possession and one count of drug trafficking. More specifically, Barnes was convicted of possession of heroin in an amount equal to or exceeding 100 grams and possession of cocaine in an amount equal to or exceeding 27 grams, but less than 100 grams. He does

not challenge his trafficking conviction. Further, he does not contest the weight or analysis of the drugs that were found during the search of the apartment. Instead, he only argues on appeal that he did not possess the drugs that were found. R.C. 2925.11 governs drug possession offenses and provides in section (A) that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." This Court has previously observed with regard to the "knowingly" element of the offense as follows:

> " ' "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." ' "

*State v. Bailey*, 4th Dist. Ross No. 14CA3461, 2015-Ohio-5483, ¶ 85, quoting *State v. Wickersham*, 4th Dist. Meigs No. 13CA10, 2015-Ohio-2756, ¶ 30, quoting R.C. 2901.22(B).

{¶21} With respect to the possession of heroin, R.C. 2925.11(C)(6)(f) provides as follows:

> (C) Whoever violates division (A) of this section is guilty of one of the following:
> * * *
> (6) If the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of possession of heroin. The penalty for the offense shall be determined as follows:
> * * *
> (f) If the amount of the drug involved equals or exceeds one thousand unit doses or equals or exceeds one hundred grams, possession of

heroin is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term a maximum first degree felony mandatory prison term.

Further, with respect to possession of cocaine R.C. 2925.11(C)(4)(e) provides as follows:

> (C) Whoever violates division (A) of this section is guilty of one of the following:
> * * *
> (4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:
> * * *
> (e) If the amount of the drug involved equals or exceeds twenty-seven grams but is less than one hundred grams of cocaine, possession of cocaine is a felony of the first degree, and the court shall impose as a mandatory prison term a first degree felony mandatory prison term.

{¶22} This Court has previously observed that " 'possession' is defined as 'having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.' " *State v. Gavin*, 4th Dist. Scioto No.13CA3592, 2015-Ohio-2996, ¶ 35, quoting R.C. 2925.01(K). " 'Possession may be actual or constructive.' " *Gavin* at ¶ 35, quoting *State v. Moon*, 4th Dist. Adams No. 08CA875, 2009-Ohio-4830, ¶ 19, citing *State v. Butler*, 42 Ohio St.3d 174, 175, 538 N.E.2d 98 (1989) ("[t]o constitute possession, it is sufficient that the defendant has constructive possession").

{¶23} " ' "Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession." ' " *Gavin*, *supra*, at ¶ 36, quoting *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.), in turn quoting *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 39. As we explained in *Gavin, supra*, " '[c]onstructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession.' " *Gavin, supra*, at ¶ 36, quoting *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362, syllabus (1982); *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 19. For constructive possession to exist, the State must show that the defendant was conscious of the object's presence. *Gavin, supra*; *Hankerson* at 91; *Kingsland* at ¶ 13. "A defendant's mere presence in an area where drugs are located does not conclusively establish constructive possession." *State v. Markin*, 4th Dist. Pickaway No. 13CA22, 2014-Ohio-3630, ¶ 29, citing *State v. Williams*, 4th Dist. Ross No. 03CA2736, 2004-Ohio-1130, ¶ 25; *State v. Cola*, 77 Ohio App.3d 448, 450, 602 N.E.2d 730 (11th Dist.1991); *Cincinnati v. McCartney*, 30 Ohio App.2d 45, 48, 281 N.E.2d 855 (1st Dist.1971). However, as explained in *Markin*, "a defendant's proximity to drugs may constitute some evidence of constructive possession." *Markin* at ¶ 29, citing *Williams* at ¶ 25. Thus, a defendant's "[m]ere presence in the vicinity of drugs,

coupled with another factor probative of dominion or control over the contraband, may establish constructive possession." *Markin* at ¶ 29, citing *State v. Fugate*, 4th Dist. Washington No. 97CA2546, 1998 WL 729221, *7. It is under this framework that Barnes argues he was simply present when the officers executed the search warrant in the apartment. He further claims that it was not his apartment, that he did not live there, and that he had no knowledge of drugs being present there.

{¶24} In *Wickersham, supra,* we noted the well-established holding, however, that "a defendant may be convicted solely on the basis of circumstantial evidence." *Id.* at 9; *State v. Nicely*, 39 Ohio St.3d 147, 151, 529 N.E.2d 1236 (1988). "Circumstantial evidence and direct evidence inherently possess the same probative value." *Jenks*, paragraph one of the syllabus. "Circumstantial evidence is defined as '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved. * * * ' " *Nicely*, *supra*, at 150, quoting Black's Law Dictionary (5 Ed.1979) 221. Both dominion and control, and whether a person was conscious of the object's presence may be established through circumstantial evidence. *Gavin, supra*; *Brown, supra,* at ¶ 19. "Moreover, two or more persons may have joint constructive possession of the same object." *Id.*

{¶25} In the case sub judice, Barnes contends the State failed to prove that he either actually or constructively possessed the heroin and cocaine that was found hidden in the cabinets, a cereal box, and a nightstand of the apartment. In support of his contention, Barnes argues that Domonique Brown was subleasing the apartment from Charlease Barnes and that he only stopped in there on occasion to have visitation with his daughter. Barnes claims that during the occasions when he would spend the night he always slept on the couch and that he never stored any of his belongings there. He further argues that he had not noticed the digital scales with residue, plastic gloves or baggies sitting on the kitchen table, and that he thought the kilo press that was mounted to the wall was a tire jack.

{¶26} The testimony of several law enforcement officers, however, indicated that the apartment was very small and that the scales, gloves, baggies, and kilo press were in plain view. Furthermore, testimony introduced by the State indicates that a kilo press is used to condense powder into tablets. There were 335 tablets containing a mixture of cocaine, heroin, fentanyl and six simondium morphine found hidden in the apartment. Further, Barnes conceded at trial and concedes on appeal that he sold fentanyl heroin to Steven Livingston, the confidential informant, on September 20, 2018, the day prior to the execution of the search warrant. Detective Taczak testified that on the day of the controlled buy she observed Barnes exit the apartment at issue and get into a vehicle to drive to

the Certified Station to sell fentanyl heroin to the confidential informant. As the record demonstrates, fentanyl heroin is the drug that was found in such large quantities in the apartment that led to Barnes being charged as a major drug offender.

{¶27} Barnes claims that he sold drugs to the confidential informant out of his personal stash and that he had no knowledge that there were other drugs in the apartment. However, Barnes' denials conflict with other testimony in the record indicating that during the search Barnes admitted to law enforcement that he had sold drugs for Brown in the past in order to make money. There is also testimony in the record that Barnes stated during the search that if anything illegal was found it belonged to Brown, not him, which could be interpreted to indicate Barnes knew that something illegal might be found. Finally, the State introduced testimony from law enforcement indicating that when Barnes left the apartment after the search he took several bags of clothing and shoes which he removed from the bedroom, as well as an Xbox that was located in the living room. Additionally, although the property manager testified that he had not noticed Barnes living there and had not noticed any extra cars on the lot, he conceded that he isn't there all the time. Furthermore, Barnes testified that he did not own a vehicle at the time of the search. Thus, the property manager's testimony offers little in support of Barnes' arguments.

{¶28} In conducting a manifest weight review, we are guided by the presumption that the trier of fact " 'is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony.' " *Williams, supra*, quoting *Seasons Coal Co. v. Cleveland, supra*, at 80.  Here, the jury was instructed as to the legal definitions of direct evidence, circumstantial evidence, actual possession, constructive possession, and credibility.  The jury was further instructed as to the weight of the evidence and they were free to believe all, part, or none of any witness's testimony.  *State v. Markin* at ¶ 41.  Barnes' arguments on appeal essentially amount to a challenge to the jury's credibility determinations.  However, as previously stated, credibility is generally an issue for the trier of fact.  Additionally, just because the jury apparently resolved the conflicting testimony in favor of the prosecution does not mean that Barnes' convictions are against the manifest weight of the evidence.  *See generally State v. Pyles,* 4th Dist. Scioto No. 17CA3790, 2018-Ohio-4034, ¶ 65.  Further, "an appellate court will leave the issues of weight and credibility of the evidence to the fact-finder, as long as a rational basis exists in the record for its decision."  *Id.*, citing *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012-Ohio-1282, ¶ 24.  *Accord State v. Howard*, 4th Dist. Ross No. 07CA2948, 2007-Ohio-6331, ¶ 6.

{¶29} After examining the record, and based upon the foregoing, we find the State presented substantial evidence upon which the trier of fact reasonably could conclude beyond a reasonable doubt that all of the essential elements of the crimes for which Barnes was convicted had been established.  Further, in light of the above evidence, we cannot find the trier of fact somehow lost its way or that the evidence weighed heavily against Barnes' convictions.  Accordingly, we find that Barnes' convictions were not against the manifest weight of the evidence.  Thus, we necessarily also conclude that sufficient evidence supports his convictions.  We therefore overrule Barnes' first and second assignments of error.

ASSIGNMENT OF ERROR III

{¶30} In his third assignment of error, Barnes contends the trial court erred when it failed to determine if he was a major drug offender in the sentencing entry. Barnes argues that although the trial court sentenced him to a mandatory eleven-year prison term, which is the maximum sentence possible for a first-degree felony, the trial court failed to indicate whether he "was or was not given a major drug offender specification."  Appellant thus argues the sentencing entry is unclear and the matter should be remanded for the trial court to correct the sentencing entry to correspond with the convictions.  The State concedes that the trial court did not make a specific major drug offender finding in the sentencing entry, however, the State argues that because the trial court properly sentenced Barnes to

a mandatory, maximum sentence of eleven years, the sentence is not contrary to

law. The State also draws to our attention the fact that the jury found Barnes guilty

of this specification and the trial court made the pronouncement during disposition.

The State thus argues that, at most, the matter should be remanded to the trial court

to correct the clerical error of omitting this finding from the sentencing entry.

Standard of Review

{¶31} R.C. 2953.08(G)(2) defines appellate review of felony sentences and

provides, in relevant part, as follows:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court. The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

{¶32} " '[A]n appellate court may vacate or modify a felony sentence on

appeal only if it determines by clear and convincing evidence that the record does

not support the trial court's findings under relevant statutes or that the sentence is

otherwise contrary to law.' " *State v. Pierce*, 4th Dist. Pickaway No. 18CA4,

2018-Ohio-4458 ¶ 7, quoting *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 23. This is a deferential standard. *Id.* at 23. Furthermore, "appellate courts may not apply the abuse-of-discretion standard in sentencing-term challenges." *Id.* at ¶ 23. Additionally, although R.C. 2953.08(G) does not mention R.C. 2929.11 or 2929.12, the Supreme Court of Ohio has determined that the same standard of review applies to findings made under those statutes. *Id.* at ¶ 23 (stating that "it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court," meaning that "an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence").

{¶33} "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *State v. Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus (1954).

{¶34} Further, as we observed in *State v. Pierce*, *supra*, the Eighth District Court of Appeals has noted as follows:

It is important to understand that the "clear and convincing" standard applied in R.C. 2953.08(G)(2) is not discretionary. In fact, R.C. 2953.08(G)(2) makes it clear that "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." As a practical consideration, this means that appellate courts are prohibited from substituting their judgment for that of the trial judge. It is also important to understand that the clear and convincing standard used by R.C. 2953.08(G)(2) is written in the negative. It does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings. In other words, the restriction is on the appellate court, not the trial judge. This is an extremely deferential standard of review.

*Pierce*, *supra*, at ¶ 8, quoting *State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 20-21.

Legal Analysis

{¶35} Here, as set forth above, Barnes argues this matter must be remanded to the trial court so that the court can correct the sentencing entry to indicate that Barnes was found to be a major drug offender. In support of his argument, Barnes cites R.C. 2941.1410(C), which provides that "[t]he court shall determine the issue of whether an offender is a major drug offender."[1] The indictment charged Barnes with first-degree felony possession of heroin and contained a major drug offender specification which alleged Barnes possessed an amount equal to or exceeding 100 grams. The record before us indicates that the jury essentially determined Barnes

---

[1] The current version of R.C. 2941.1410 went into effect on October 31, 2018 and is not applicable to the present case. Instead, the prior version of R.C. 2941.1410 with an effective date of March 23, 2000, applies. The prior version also provides that the trial court shall determine the issue of whether an offender is a major drug offender, but it does so in section (B), rather than section (C).

was a major drug offender by virtue of the fact that it specifically found he possessed 100 or more grams of heroin on the verdict form. Furthermore, the trial court acknowledged as much during the sentencing hearing, explaining that it was required to impose a mandatory, eleven-year prison term on that count.

{¶36} Although R.C. 2941.1410 provides that the trial court shall determine whether an offender is a major drug offender, it does not state that such finding must be contained in the sentencing entry. Additionally, R.C. 2929.19, which governs sentencing hearings, and R.C. 2929.14, which governs prison terms, likewise fail to require that a major drug offender finding be included in a sentencing entry. Furthermore, as set forth above, R.C. 2925.11(C)(6)(f) provides as follows:

> (C) Whoever violates division (A) of this section is guilty of one of the following:
> * * *
> (6) If the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of possession of heroin. The penalty for the offense shall be determined as follows:
> * * *
> (f) If the amount of the drug involved equals or exceeds one thousand unit doses or equals or exceeds one hundred grams, possession of heroin is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term a maximum first degree felony mandatory prison term.

Thus, an offender is statutorily deemed a major drug offender if the amount of heroin possessed equals or exceeds one hundred grams. Here the jury's finding

that Barnes possessed 100 or more grams of heroin results in Barnes being statutorily determined to be a major drug offender under R.C. 2925.11(C)(6)(f). *See State v. Dues*, 8th Dist. Cuyahoga No. 100861, 2014-Ohio-5276, 24 N.E.3d 751, ¶ 50 (explaining that once the jury found Dues guilty of possessing and trafficking over 100 grams of cocaine, the major drug offender determination was automatic).

{¶37} In *State v. Dues*, the court discussed the fact that "R.C. 2941.1410(B) [now (C)], as worded, requires the trial court to determine the issue of whether an offender is a MDO." *State v. Dues* at ¶ 49. The *Dues* court further notes that "[t]his appears to be inconsistent with the principle that elements necessary for a penalty enhancement must be found by the trier of fact, not the court." *Id.*, citing *State v. Fort*, 8th Dist., 2014-Ohio-3412, 17 N.E.3d 1172, ¶ 28, in turn citing *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). The *Dues* court additionally noted its prior observation in *Fort*, *supra*, that the United States Supreme Court's decision in *Alleyne* appears to lead to the conclusion that Ohio's major drug offender statutes could be constitutionally infirm where a trial court makes factual determinations to enhance a defendant's sentence. *Dues* at ¶ 49, citing *Fort* at ¶ 32. However, the *Dues* court found that because the jury found Dues was a major drug offender based upon its finding that Dues possessed over 100 grams of cocaine, the case did not have an "*Alleyne* problem."

*Dues* at ¶ 50. The same reasoning would apply here, as the jury made the specific finding regarding the quantity of heroin possessed by Barnes, not the trial court.

{¶38} Moreover, in *State v. Pena*, 10th Dist. Franklin No. 06AP-688, ¶ 15, the court explained that the portions of R.C. 2929.14 requiring judicial fact-finding before imposition of additional penalties for major drug offender specifications had been severed from the statute by *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. *Pena* at ¶ 15, citing *State v. Foster* at ¶ 97 ("We also excise R.C. 2929.14(D)(2)(b) and (D)(3)(b), which require findings for repeat violent offenders and major drug offenders."). Taking all of this together and applying it to the record presently before us, we conclude that Barnes was properly found guilty of the major drug offender specification contained in the indictment, in light of the jury's finding that he was guilty of possessing an amount of heroin equal to or exceeding 100 grams. Further, because R.C. 2929.11(C)(6)(f), by its terms, classified Barnes as a major drug offender, the trial court was required to impose a mandatory, maximum prison sentence of eleven years, which it did. Furthermore, it arguably would have been error for the trial court to make the major drug offender determination, in light of *Foster*, *supra*, as interpreted by *Pena*, *supra*. Moreover, we have found nothing, and Barnes has cited us to nothing that requires the trial court to include a specific determination in the sentencing entry regarding a defendant's classification as a major drug offender. Nor has Barnes provided any

legal support for the proposition that the failure to include major drug offender language in a sentencing entry results in the sentence being contrary to law or resulting in reversible error on appeal.

{¶39} In light of the foregoing, we cannot conclude that the trial court erred in sentencing Barnes, or that his sentence is otherwise contrary to law. Thus, we find no merit to Barnes' third assignment of error. Accordingly, it is overruled. Having found no merit in any of the assignments of error raised by Barnes, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Hess, A.J., concur in Judgment and Opinion.

For the Court,


_____
Jason P. Smith
Presiding Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**